# EXHIBIT

# A

CAUSE NO. __B183015__

| | | |
|---|---|---|
| FRANK MORRIS GOODMAN and | § | IN THE DISTRICT COURT OF |
| MISTY SONNIER, Individually and as | § | |
| Personal Representatives of the | § | |
| Estate of Judy Goodman, Deceased, | § | |
| Plaintiffs. | § | |
| | § | |
| | § | JEFFERSON COUNTY, TEXAS |
| VS. | § | |
| | § | |
| | § | |
| ETHEX CORPORATION, and | § | |
| KV PHARMACEUTICAL, | § | 100th JUDICIAL DISTRICT |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, PLAINTIFFS, FRANK MORRIS GOODMAN AND MISTY SONNIER,

Individually and as Personal Representatives of the Estate of Judy Goodman, Deceased, (hereinafter

"Plaintiffs") complaining of Ethex Corporation, and KV Pharmaceutical (hereinafter "Defendants")

and for cause of action would respectfully show unto the Court the following:

### I. Discovery Level

Plaintiffs respectfully request the adoption of a discovery plan under Level 3 of the Texas

Rules of Civil Procedure.

### II.    Parties

Plaintiff, Frank Morris Goodman, is a Texas citizen and resident citizen of Jefferson County,

Texas. He is the surviving husband of Judy Goodman, Deceased; and he brings this action in both

his individual and representative capacities.

Plaintiff, Misty Sonnier is a Texas citizen and resident citizen of Jefferson County, Texas.

She is the daughter of Judy Goodman, Deceased; and she brings this action in both her individual

and representative capacities.

Defendant, KV PHARMACEUTICAL, is a corporation that conducts business in Texas, including Jefferson County, Texas, where it regularly and systematically conducts business. This defendant may be served at: 10850 Metro Court, Maryland Heights, Missouri 63043.

Defendant, ETHEX CORPORATION, is a corporation that conducts business in Texas, including Jefferson County, Texas, where it regularly and systematically conducts business, and is a subsidiary of KV Pharmaceutical. This defendant may be served at: Corporate Headquarters, One Corporate Woods Drive, St. Louis, Missouri 63044.

### III.    Venue

Venue is proper in Jefferson County, Texas pursuant to Section 15.002(a)(1) of the Texas Civil Practice & Remedies Code in that all or a substantial part of the events or omissions giving rise to the claim occurred in Jefferson County, Texas.

### IV. Facts

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein. At all times pertinent hereto, Defendants, their agents, servants and/or employees provided prescription drugs to the Walgreens Company ("Walgreen") located at 3700 Hwy 365, Nederland, Texas 77627, as well as to Plaintiffs and many other pharmacies throughout Jefferson County, Texas and across the United States. While under medical care and with a valid prescription Mrs. Goodman was prescribed Morphine Sulfate ER tablets that were filled at Walgreen Co. at 3700 Hwy 365, Nederland, Jefferson County, Texas 77627.  Mrs. Goodman, in good faith, took this medication from June 2007 until her untimely death on April 10, 2008.  In June of 2008, Mr. Goodman received the *"URGENT DRUG RECALL INFORMATION"* attached hereto as Exhibit "A" informing the Goodman family that her tablets *may be* (and may have been) oversized and to contact her physician; if oversized, the ER tablets would have included *more* than the acceptable

2

dosage for Mrs. Goodman. They were. Unfortunately, Defendants' recall of Defendants' defective Morphine Sulfate ER tablets was too late. Mr. Goodman received this letter (here in Jefferson County, Texas) after Mrs. Goodman's death (also here in Jefferson County, Texas) and, according to the death certificate and autopsy report attached hereto as Exhibit "B," she died from drug toxicity.

Plaintiffs, through the undersigned, provided information to the Defendants prior to filing suit, including medical records and the death certificate alerting them that the death of Mrs. Goodman was a result of "drug toxicity." Indeed, a doctor for the Defendants contacted the undersigned about the information to help Defendants prepare a report of this death to the government. Unfortunately, despite written request, Defendants did not allow the undersigned to participate in that report, nor did Defendants make any effort to further communicate or share information with the undersigned. Notably, the Defendants provided the Plaintiffs *no information whatsoever*, while the Plaintiffs voluntarily provided Defendants records and information pertinent to the overdose.

The Defendants were responsible for the safe manufacture, provision, monitoring, and warnings relating to their Morphine Sulfate ER tablets, which Defendants breached. Moreover, Defendants were under a duty to timely provide pertinent information regarding their drugs, including Morphine Sulfate ER tablets, as well as a duty to timely and properly recall drugs they knew, or should have known, were defective—including the Morphine Sulfate ER tablets. Defendants breached these and other duties, and such breaches complained of herein were a proximate and/or producing cause of Judy Goodman's tragic death.

V.    **Fraudulent Concealment and Application of the Discovery Rule**

COPY

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

The nature of Judy Goodman's injuries and her relationship to Morphine Sulfate ER tablets use were inherently undiscoverable; and, consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of the existence of their claims against Defendants. *See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001).

Plaintiff's claims against Ethex Corporation and KV Pharmaceutical and Walgreen Company are timely filed because those claims, upon information and belief, may be encompassed in the class definition of one or more putative class actions filed against Defendants Ethex Corporation and KV Pharmaceutical, and the statute of limitations has been tolled under the principles set out in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974).

Further, Plaintiffs did not have knowledge of facts that would lead a reasonable, prudent person to make inquiry to discover Defendants' tortious conduct. Under appropriate application of the "discovery rule," Plaintiffs suit was filed well within the applicable statutory limitations period.

Defendants affirmatively and intentionally lulled, induced, and otherwise prevented Plaintiffs from discovering the existence of her various causes of action against Defendants through their fraudulent acts, omissions, concealment's and suppression of the dangers associated with Morphine Sulfate ER tablets and other information necessary to put Plaintiffs on notice. *See Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001). Plaintiffs have therefore been kept in ignorance of vital information essential to the pursuit of their claims, without any fault or lack

4

of diligence on their part. Plaintiffs could not have reasonably discovered the fraudulent nature of Defendants' conduct, and reasonably relied on Defendant's misrepresentation and/or silence.

## VI.    Causes of Action

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

Defendants, Ethex Corporation and KV Pharmaceutical, designed, researched, manufactured, promoted, marketed, sold and distributed the drugs Morphine Sulfate ER Tablets.

Defendants, Ethex Corporation and KV Pharmaceutical, concealed their knowledge of Morphine Sulfate ER Tablets defects from Plaintiff and others.

Defendants, Ethex Corporation and KV Pharmaceutical, failed to adequately conduct testing and/or research on Morphine Sulfate ER Tablets, prior to marketing, manufacturing, distributing and/or selling said drug.

Defendants, Ethex Corporation and KV Pharmaceutical, failed to adequately conduct post-marketing surveillance and/or testing of its drug Morphine Sulfate ER Tablets subsequent to their marketing, manufacturing, distribution, and/or selling of said drug.

Defendants, Ethex Corporation and KV Pharmaceutical, under-reported, underestimated, and downplayed the serious and dangerous side effects of Morphine Sulfate ER Tablets.

### A. Products Liability

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

Plaintiffs would show that this action is maintained pursuant to what is commonly called "products liability law." Defendants, Ethex Corporation and KV Pharmaceutical, are liable under the theory of strict liability as set forth in Section 402A of the Restatement of Torts (Second). Defendants, Ethex Corporation and KV Pharmaceutical, were, at all material times, engaged in the business of manufacturing and/or producing Morphine Sulfate ER Tablets. The Morphine Sulfate

5

ER Tablets in question were in an unreasonably dangerous product when sold by Defendants, Ethex Corporation and KV Pharmaceutical. Said unreasonably dangerous product was a producing cause of the injuries made the basis of this suit.

### B. Negligence and Gross Negligence ("Malice")

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

Defendants, Ethex Corporation and KV Pharmaceutical, failed to exercise reasonable care in the design, researching, manufacturing, marketing, supplying, promoting, packaging, selling, testing, quality assurance, quality control, and/or distribution of Morphine Sulfate ER Tablets into interstate commerce in that Defendants knew or should have known that using Morphine Sulfate ER Tablets created a high risk of unreasonable, dangerous side effects or death.

The negligence of Defendants, Ethex Corporation and KV Pharmaceutical, their agents, servants and/or employees, including but was not limited to the following acts and/or omissions:

(a) Manufacturing, producing, promoting, formulating, creating, and/or designing Morphine Sulfate ER Tablets without adequately testing them;

(b) Manufacturing, producing, promoting, formulating, creating, and/or designing Morphine Sulfate ER Tablets without testing them;

(c) Not conducting sufficient testing programs to determine whether or not the aforesaid drug was safe for use; in that Defendants knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contraindications, and inherit dangers to its users;

(d) Selling Morphine Sulfate ER Tablets without making proper and sufficient tests to determine that dangers and/or contraindications thereof;

(e) Negligently failing to adequately and correctly warn the public and the medical, psychiatric and healthcare profession (including but not limited to Walgreen Co.) of the dangers contraindications, and/or side effects of Morphine Sulfate ER Tablets;

6

(f)     Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with Morphine Sulfate ER Tablets, including Plaintiffs and Walgreen Co.;

(g)     Negligently advertising and recommending the use of Morphine Sulfate ER Tablets without sufficient knowledge as to its dangerous propensities;

(h)     Negligently representing that said drug was safe for use for its intended purpose, when it fact, it was unsafe;

(i)     Improperly obtaining the approval of the FDA to market the drug after misrepresenting the risks of the drug to the FDA, in knowing this was a substance, which caused injury to its users;

(j)     Failing to do appropriate post-market testing of Morphine Sulfate ER Tablets; and

(k)     Failing to appropriate post-market surveillance of Morphine Sulfate ER Tablets.

(l)     Failing to timely and or appropriately recall Morphine Sulfate ER Tablets, including failure to institute a speedy, appropriate, exhaustive, and complete recall of the Morphine Sulfate ER Tablets to prevent further distribution or use of the defective drugs;

(m)     Other acts and omissions to be specified at a later date or at time of trial.

Defendant under-reported, underestimated and downplayed the serious and dangerous side effects of Morphine Sulfate ER Tablets.

Defendant was negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, recalling and sale of Morphine Sulfate ER Tablets in that Defendant:

(a)     Failed to use due care in designing and manufacturing Morphine Sulfate ER Tablets so as to avoid the aforementioned risks to individuals who used Morphine Sulfate ER Tablets;

(b)     Failed to accompany their product with proper warnings regarding possible adverse side effects / defects associated with the use of Morphine Sulfate ER Tablets;

7

(c)      Failed to warn Plaintiff of the severity and duration of such adverse side effects, as the warnings given did not accurately reflect the symptoms, and/or severity of the side effects / defects;

(d)      Failed to conduct adequate testing, including pre-clinical and clinical testing and/or post-marketing surveillance to determine the safety of Morphine Sulfate ER Tablets for its intended use and/or other off-label use for which Morphine Sulfate ER Tablets was and/or is still used;

(e)      Failed to warn Plaintiff prior to actively encouraging the sale of Morphine Sulfate ER Tablets, either directly or indirectly, orally or in writing, about the need for comprehensive, regular medical monitoring to ensure early discovery of potentially serious side effects / defects;

(f)      Was otherwise careless or negligent or committed acts and omissions to be specified at a later date or at time of trial.

Despite the fact that Defendants, Ethex Corporation and KV Pharmaceutical, knew or should have known that Morphine Sulfate ER Tablets caused unreasonably dangerous side effects or had defects, Defendants continued to market, manufacture, distribute and/or sell Morphine Sulfate ER Tablets to consumers, including but not limited to Plaintiff, or Defendants failed to institute a timely and effective recall of the drugs.

Defendants, Ethex Corporation and KV Pharmaceutical, knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care.

Defendants, Ethex Corporation and KV Pharmaceutical, negligence was the proximate cause of Plaintiff's injuries, harm, and economic loss, which Plaintiffs suffered.

As a result of the foregoing acts and omissions, Plaintiff, Judy Goodman was fatally injured through ingestion of Defendants' product, despite her proper use of the medication as instructed by Defendants and her medical providers.

As a result of the foregoing acts and omissions, Plaintiffs seek compensatory damages and punitive damages.

8

The Plaintiffs further allege that the Defendants' acts and/or omissions, as described herein, were the result of the Defendants' heedless and reckless disregard for the rights of the Plaintiffs and the general public. The Defendants' acts and/or omissions involve such an entire want of care so as to indicate that the negligence complained of was the result of the Defendants' conscious indifference to the rights, welfare and safety of the Plaintiffs and the general public. The Defendants, in addition or alternative to acting ordinarily and grossly negligent as outlined above, acted with malice subjecting them to the imposition of punitive damages, for which the Plaintiffs expressly seek recovery.

In addition or in the alternative, the acts and omissions of the Defendants outlined above constitute not only negligence, but also "malice" as that term is defined in TEX.CIV.PRAC.& REM.CODE ANN. § 41.001(11)(A) through (B). The Plaintiffs further assert that these Defendants' acts and/or omissions were the result of the Defendants' flagrant disregard for the rights of these Plaintiffs, and were additionally, the result of Defendants' actual awareness that their negligence would, in all probability, result in injuries to the Plaintiffs. By reason of the Defendants' gross negligence, willful omission, and/or malice, the Plaintiffs hereby seek recovery of punitive and exemplary damages from all Defendants in accordance with TEX.CIV.PRAC. & REM. CODE § 41.001, 41.003, and 40.010, common law, and the laws of the State of Texas.

Because one or more crimes and/or felonies was committed and/or the acts were committed with malice, there are no caps to the damages sought herein, nor are there any caps on punitive damages. TEX. CIV. PRAC. & REM. CODE § 41.008.

**C. Defective Design**

9

COPY

Plaintiff repeats, reiterates and re-alleges each and every allegation previously set forth herein.

At all times herein mentioned, Defendants manufactured, compounded, distributed, recommended, supplied, merchandized, advertised, promoted and/or sold, the aforesaid Morphine Sulfate ER Tablets as hereinabove described, and Plaintiffs used said product.

Morphine Sulfate ER Tablets were expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition, in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

At those times, the drug product Morphine Sulfate ER Tablets, were in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiffs.

The Morphine Sulfate ER Tablets manufactured and/or supplied by Defendants were defective in design or formulation, in that, when it left the hands of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits associated with the design or formulation.

The Morphine Sulfate ER Tablets manufactured and/or supplied by Defendants were defective in design and/or formulation, in that, when it left the hands of the manufacturer and/or supplier, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer, including Plaintiffs, would expect.

At all times herein mentioned, the said drug product Morphine Sulfate ER Tablets were in a defective condition and unsafe, and Defendants knew or had reasons to know that said product was defective and unsafe, especially when used in the form and/or manner as provided by Defendants.

10

Defendants knew, or should have known that at all times herein mentioned its Morphine Sulfate ER Tablets were in a defective condition, inherently dangerous and/or unsafe.

At the time of Judy Goodman's use of Morphine Sulfate ER Tablets, the Morphine Sulfate ER Tablets were being used for the purpose and in a manner normally intended, recommended, promoted and/or marketed by Defendants.

Defendants, with this knowledge, voluntarily designed Morphine Sulfate ER Tablets in a dangerous condition for consumption by the public, and in particular, Plaintiff, Judy Goodman.

Defendants had a duty to create and/or sell a product that was not unreasonably dangerous for its normal, intended use.

Defendants created and/or sold a product unreasonably dangerous for its normal intended use.

Defendants designed, manufactured, and distributed a defective product, which created an unreasonable risk to the health of consumers and to Judy Goodman and Defendants are therefore strictly liable for the injuries sustained by, Judy Goodman.

Plaintiffs could not, by the exercise of reasonable care, have discovered the defects herein mentioned and perceived their danger.

The Morphine Sulfate ER Tablets manufactured and/or supplied by Defendants were defective due to inadequate warnings or instructions because the manufacturer knew or should have known that the product created a high risk of death.

The Morphine Sulfate ER Tablets manufactured and/or supplied by Defendants were defective due to inadequate warnings and/or inadequate testing.

The Morphine Sulfate ER Tablets manufactured and/or supplied by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after the

11

manufacture know or should have known of the risks of death and other serious health risks from

Morphine Sulfate ER Tablets, it failed to provide adequate warning to users, consumers, and/or

prescribing physicians, psychiatrists, pharmacies and hospitals of the product, and continued to

promote the product.

By reason of the foregoing, Defendants have become strictly liable in tort to Plaintiffs for

the manufacturing, marketing, promoting, distribution, and selling of a defective product,

Morphine Sulfate ER Tablets.

Defendant's defective design, manufacturing defect, and inadequate warnings of

Morphine Sulfate ER Tablets were acts that amount to willful, wanton, and/or reckless conduct

by Defendants.

Said defects in Defendant's Morphine Sulfate ER Tablets were a substantial factor in

causing Plaintiff's death.

As a result of the foregoing acts and omissions, Plaintiff, Judy Goodman was fatally

injured.

**D.      Breach of Express Warranty**

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth

herein.

Defendants expressly warranted that Morphine Sulfate ER Tablets were safe and well

accepted by users.

Plaintiffs relied on the express warranties of Defendant.

Members of the medical community, including physicians, psychiatrists, pharmacies (like

Walgreen Co.) and other healthcare professionals, relied upon the representations and warranties

12

of Defendants for use of said drug Morphine Sulfate ER Tablets in prescribing, recommending and or dispensing this product.

Defendants breached the aforesaid express warranties, as its product Morphine Sulfate ER Tablets were defective, as is, and has been, set forth herein.

Defendants expressly represented to the users and their physicians, psychiatrists, pharmacies, and healthcare providers that said drug Morphine Sulfate ER Tablets were safe and fit for use for the purposes intended, that it was of merchantable quality, that did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that said drug Morphine Sulfate ER Tablets were not safe and fit for the use intended, and, in fact, produces serious injuries to user.

Morphine Sulfate ER Tablets do not conform to these express representations because Morphine Sulfate ER Tablets are not safe, have numerous serious side effects and causes death.

As a direct and proximate result of the breach of said warranties, Judy Goodman was fatally injured.

### E.  Breach of Implied Warranties

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

At all times, Defendants marketed, sold and distributed Morphine Sulfate ER Tablets for use by Plaintiffs, Defendant knew of the use for which Morphine Sulfate ER Tablets were intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was prescribed to Judy Goodman, Defendants impliedly warranted to Plaintiffs that the product was merchantable quality and safe for the use for which it was intended.

The product was unsafe for its intended use, and it was not merchantable quality as warranted by Defendants in that it had very dangerous propensities and/or defects when put to its intended use and would cause severe injury or death to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities and/or defects that either were known for reasonably scientifically knowable at the time of distribution. The aforesaid product did cause Judy Goodman's death as herein alleged.

Defendant impliedly represented and warranted to Plaintiff that the Morphine Sulfate ER Tablets it was supplying to Judy Goodman was safe and fit for ordinary use.

Defendants impliedly represented and warranted to the users and their physicians, psychiatrists, pharmacies (like Walgreen Co.) and healthcare providers that Morphine Sulfate ER Tablets were safe and of merchantable quality, and fit for the ordinary purpose for which said product was to be used.

Said representation and warranties aforementioned were false, misleading and inaccurate in that said drug product Morphine Sulfate ER Tablets, and unsafe, unreasonable, dangerous, improper, not of merchantable quality and/or defective.

Plaintiffs and members of the medical and pharmaceutical community did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

14

Judy Goodman and her physicians, psychiatrists, and pharmacists reasonably relied upon the skill and judgment of Defendants as to whether Morphine Sulfate ER Tablets were of merchantable quality and safe and fit for its intended use.

Morphine Sulfate ER Tablets products were injected into the stream of commerce (including into Jefferson County, Texas by significant amounts) by Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

Defendants knew the purpose for which Judy Goodman and Plaintiffs' bought the Morphine Sulfate ER tablets and that the product was not fit for the consumer's purpose. Defendants who sold the Morphine ER Sulfate tablets were merchants with respect to the goods, and the goods were of a quality that would pass without objection in the pharmaceutical trade. Fungible goods, such as drugs, must be of fair and average quality within the contract description.

Defendants breached the aforesaid implied warranties, as its product Morphine Sulfate ER Tablets was not fit for its intended purpose and use.

As a result of the foregoing acts and omissions, Plaintiffs seek actual, compensatory and punitive damages from Defendants as alleged herein.

**E. Fraudulent / Negligent Misrepresentation**

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

Defendants falsely, fraudulently, and/or negligently misrepresented to the medical, psychiatric, and pharmaceutical community, and to Plaintiffs and the public in general, that said

15

product Morphine Sulfate ER Tablets had been tested and found to be safe and effective for the treatment of schizophrenia and bipolar mania.

The representations made by Defendants were, in fact, false.

When said representations were made by Defendants, they knew those representations to be false and they willfully, wantonly, recklessly, and/or negligently disregarded whether the representations were true.

These representations were made by Defendants with the intent of defrauding and deceiving Plaintiffs, the public in general, and the medical, psychiatric, and pharmaceutical community in particular, and with the intent of inducing Plaintiffs, the public in general, and the medical, psychiatric, and pharmaceutical community in particular, to recommend, dispense and purchase said product Morphine Sulfate ER Tablets for use in treating pain, which evinced a callous, reckless, willful, and depraved indifference to the health, safety and welfare of Plaintiff. In the alternative, these misrepresentations were made negligently by Defendants.

At the time the aforesaid representations were made by Defendants, and at the time Judy Goodman used Morphine Sulfate ER Tablets, Plaintiffs were unaware of the falsity and said representations reasonably believed them to be true.

In reliance upon said representations, Judy Goodman was induced to and did use Morphine Sulfate ER Tablets, thereby causing her untimely death.

Defendants knew and were aware or should have known that Morphine Sulfate ER Tablets had not been sufficiently tested, was defective in nature, and that it lacked adequate warnings.

16

Defendants knew or should have known that Morphine Sulfate ER Tablets had a potential to cause severe, grievous injury and death to the users of said product, and that it was inherently dangerous.

Defendants brought Morphine Sulfate ER Tablets to the market, and acted fraudulently, wantonly, maliciously, and/or negligently to the detriment of Plaintiffs.

At all times during the course of dealing between Defendants and Plaintiffs, Defendants misrepresented that Morphine Sulfate ER Tablets were safe for its intended use.

Defendants knew, were reckless in not knowing, or should have known that their representations were false.

In representations to Plaintiffs, Defendants fraudulently concealed and intentionally omitted the following material information, or negligently misrepresented it:

    (a)    That Defendants were aware of Morphine Sulfate ER Tablets dangers / defects.

    (b)    That Morphine Sulfate ER Tablets were defective, and potentially fatal.

    (c)    That patients needed to be regularly monitored while taking Morphine Sulfate ER Tablets.

    (d)    That Morphine Sulfate ER Tablets contained certain amounts of active ingredients to treat pain when, in fact, it was much higher and potentially fatal.

Moreover, Defendants made material representations that were false and that were either known false when made or were asserted without knowledge of their truth. Defendants had in their possession adverse drug event reports, drug studies and other documentation about Morphine Sulfate ER Tablets and yet made the following representations.

    (a)    Misrepresentation Morphine Sulfate ER Tablets were safe for use in treating pain.

(b)    Misrepresentations regarding the frequency of Morphine Sulfate ER Tablets - related adverse event reports or occurrences in the Morphine Sulfate ER Tablets label, package insert or PDR label;

(c)    Misrepresentations as to the existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Morphine Sulfate ER Tablets,

(d)    Misrepresentations as to the number of adverse events and deaths reported with the use of Morphine Sulfate ER Tablets,

(e)    Misrepresentations regarding the dosage and/or efficacy of Morphine Sulfate ER Tablets; and

(f)    Misrepresentations regarding the nature, seriousness, and severity of adverse events reported with the use of Morphine Sulfate ER Tablets.

Defendants were under a duty to disclose to Judy Goodman and her physicians, psychiatrists, hospital, and pharmacists, the defective nature of Morphine Sulfate ER Tablets, and/or the risks and dangers associated with Morphine Sulfate ER Tablets.

Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects and death, and hence caused damage to persons who used Morphine Sulfate ER Tablets, including Judy Goodman.

Defendants concealment and omissions of material facts concerning, *inter alia*, the safety of Morphine Sulfate ER Tablets, were made purposefully, willfully, wantonly, recklessly, and/or negligently to mislead Judy Goodman and her physicians, psychiatrists, hospitals and pharmacists into reliance, continued use of Morphine Sulfate ER Tablets, and actions thereon, and to cause them to purchase Morphine Sulfate ER Tablets and/or use the product.

Defendants knew that Judy Goodman and her physicians, psychiatrists, hospitals, and pharmacists had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Morphine Sulfate ER Tablets.

Judy Goodman, as well as her doctors, psychiatrists, health care providers, and/or hospitals reasonably relied on Defendant's concealment and/or omissions of fact.

As a result of the foregoing acts and omissions, Judy Goodman was fatally injured.

Defendants are estopped from asserting a statute of limitations defense because Defendants fraudulently concealed from Plaintiff the nature of Judy Goodman's injury and the connection between the injury and Morphine Sulfate ER Tablets.

### E. Deceptive Trade Practices

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

Defendants acted intentionally and willfully, used and employed deception, unfair and deceptive acts and practices, fraud, false promises, misrepresentations, concealment, suppression and omission of material facts with intent that physicians, pharmacists, and medical providers rely upon such concealment, suppression and omission, and for the purpose of influencing and inducing physicians and medical providers to prescribe Morphine Sulfate ER Tablets, at excessively high dosages, for unapproved "off-label" uses and/or dosage-specific uses, including treatment for pain, to patients/consumers such as Judy Goodman, and causing such patients/consumers to purchase, acquire and use Morphine Sulfate ER Tablets, at high dosages, for unapproved "off-label" uses and/or dosage-specific uses, including treatment for pain, as prescribed by their physicians and medical providers, in connection with the sale and advertisement of the drug Morphine Sulfate ER Tablets, in violation of Deceptive Trade Practices Act.

By reason of Defendants acts, uses and employment of deception, unfair and deceptive acts and practices, fraud, false promises, misrepresentations, concealment, suppression and omission of material facts, reasonable patients/consumers acting reasonably, such as Plaintiffs, were caused to suffer fatal injuries.

19

By reason of the facts and premises aforesaid, Plaintiffs were damaged in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdictional limits of this matter, and in addition, Plaintiffs seek an increase of the award of actual damages to an amount not to exceed three times the actual damages, and reasonable attorney fees, as may be found by the Court upon trial of this Action.

### F. Negligent Recall

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

As described above, Defendants designed, manufactured, marketed, distributed, or sold Morphine Sulfate ER tablets throughout Jefferson County, Texas and the United States. Once Defendants learned that the Morphine Sulfate ER tablets were defective, or potentially defective, they had a duty to Plaintiffs and others to institute an effective product recall.

Defendants breached this duty not only when Morphine Sulfate ER tablets were defective, or potentially defective, but also when they failed to institute an effective product recall after receiving notice internally, through others, or through the FDA, whichever occurred first.

As a direct and proximate result of Defendants failure to effectively recall the defective, or potentially defective Morphine Sulfate ER tablets, Judy Goodman was fatally injured and Plaintiffs have been damaged.

All of the aforementioned acts, wrongs and/or omissions, as well as various other acts, wrongs and/or omissions on the part of all Defendants, their agents, servants and/or employees, amounted to negligence, gross negligence, malice, and various other breaches to be specified at a later date or at trial, and were the proximate or producing cause of Judy Goodman's tragic death.

### VII. Negligence Per Se

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

Furthermore, the negligent and/or grossly negligent acts and or omissions described above, committed by the Defendants, violated Judy Goodman's and Plaintiffs' statutory rights under the Code of Federal Regulations. These statutory violations include but are not limited to, the provisions set forth in the following sections:

- 42 CFR§483.460(k)(1) – Drug Administration;

- 42 CFR§483.460(j) - Drug Regimen Review.

These statutes were created to protect persons in the class of Plaintiffs, who rely upon others for their care, treatment and supervision. The harm that befell Judy Goodman (and her surviving husband and daughter) while under the care of the Defendants was the type of harm these statutes were designed to prevent. Consequently, the acts and omissions of the Defendants constituted negligence per se.

### XIII. Gross Negligence—Texas Constitutional Basis

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

The above negligent acts incorporated herein by negligence, were done with malice as that term is defined in TEX.CIV. PRAC. & REM. CODE §41. 001.   In addition, the negligent acts were done with gross neglect as that term is defined in Section 26, Article XVI of the Texas Constitution. This article provides the following:

> Every person, corporation, or company, that may commit a homicide, through willful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his body or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide.

On the occasion in question, Defendants, their agents, servants, and/or employees were guilty of certain acts and wrongs, each and all amounting to gross negligence.

21



Furthermore, for all acts and/or omissions complained of herein, Defendants, their agents, servants and/or employees acted in a civil conspiracy and/or in a concert of action with one another.

### IX.    Non-Compliance With Government Standards

Plaintiffs repeat, reiterate and re-allege each and every allegation previously set forth herein.

The formulation, labeling, and/or design of the Morphine Sulfate ER tablets did not comply with mandatory safety regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the tablets. Most notably, the Morphine Sulfate ER tablets provided to Judy Goodman and the Plaintiffs were not the appropriate formulation and/or design in that they contained far more dosage than was permitted under the regulations (and her prescription), and the labeling insufficiently described the amount of dosage to adequately comply with any government standard, let alone adequately warn Judy Goodman and others.

In the alternative, if Defendants establish a presumption under any rule (including, *inter alia*, TEX.CIV.PRAC. & REM. CODE Sections 82.007 and 82.008), then Plaintiffs plead that the mandatory safety standards or regulations applicable to these tablets are inadequate to protect the public from unreasonable risks of injury or damage, or Defendants withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in this action. In the alternative, Defendants violated Title 18 U.S.C. Section 201 and that caused the warnings or instructions approved for the product to be inadequate. Most notably, Defendants sold or prescribed the Morphine Sulfate ER tablets after the FDA ordered them removed from the market and/or recalled.

Plaintiffs plead that Defendants did not adequately comply with all of the government's or agency's procedures and requirements with respect to pre-market licensing or approval. In the

22



alternative, if it is found Defendants did so comply, then these standards used in pre-market approval or licensing process were inadequate to protect the public from unreasonable risks of injury or damage, or the manufacturer withheld from or misrepresented to the government or agency information that was material and relevant to the performance of the product that was causally related to Judy Goodman's injury and death.

### IX. Damages

Plaintiffs bring this claim against Defendants under the "Wrongful Death" and "Survival" statutes, as well as the general common law of the State of Texas. TEX.CIV. PRAC. & REM. CODE § 71.001 et seq. and 71.021 et seq.

Plaintiff Frank Goodman brings this suit in the following capacities:

a.  Individually and in his own right;

b.  As Administrator or Representative of the Estate of Judy Goodman, Deceased;

c.  As surviving husband of Judy Goodman, Deceased;

d.  In all capacities authorized by law, including statutory beneficiary under the Texas Wrongful Death Act, and heirs and authorized representatives under the Texas Survival Statute.

Plaintiff Misty Sonnier brings this suit in the following capacities:

a.  Individually and in her own right;

b.  As Administrator or Representative of the Estate of Judy Goodman, Deceased;

c.  As surviving daughter of Judy Goodman, Deceased;

d.  In all capacities authorized by law, including statutory beneficiary under the Texas Wrongful Death Act, and heirs and authorized representatives under the Texas Survival Statute.

In addition to the general statutory and common laws of the state of Texas, this action is brought pursuant to Chapter 71, Section 71.002 of the Texas Civil Practice and Remedies Code,



commonly referred to as the "Wrongful Death Act," and Chapter 71, Subchapter B, 77.021, of the Texas Civil Practice and Remedies Code, commonly referred to as the "Survival Statute." It is pursuant to these statutes that all Plaintiffs now bring this action against these Defendants. Judy Goodman was seriously injured and ultimately died as a result of the occurrence in question and, as such, the Plaintiffs (including her estate) incurred reasonable and necessary medical expenses and funeral and burial costs. Furthermore, the Estate of Judy Goodman has suffered lost wages and/or lost earning capacity in the past and will continue to suffer lost wages and/or lost earning capacity in the future, all of which is sought by the Plaintiffs in this action. Additionally, the estate of Judy Goodman has suffered conscious pain and suffering and mental anguish prior to her death, physical impairment, and physical disfigurement, all of which is sought by her surviving husband and representative of her estate, Frank Goodman and/or Misty Sonnier. Your Plaintiffs have also lost services and income, lost business opportunities, and all such other related damages and injuries which are recoverable by law, all for which the Plaintiffs here and now pray.

Judy Goodman, prior to her death, suffered physical pain and mental anguish. Furthermore, your Plaintiffs have incurred loss of consortium and/or loss of society damages. Such damages will be shown more specifically at the time of trial, but at this time, it is stated that the Plaintiffs' general damages are within the jurisdictional limits of this Honorable Court. In addition to the above stated damages, the Plaintiffs plead specifically for those items of past medical and funeral expenses the Plaintiffs have incurred as a result of the death of Judy Goodman. The Plaintiffs, in their individual, next-friend, or representative capacities, seek to recover the afore-mentioned damages which have been sustained in the past and in reasonable probability will be sustained in the future.

Prior to her death, Judy Goodman was gainfully employed and made contributions, earned wages, and rendered services of pecuniary value to both Frank Goodman and Misty Sonnier, which have now been lost. Accordingly, Frank Goodman and Misty Soinnier seek to recover damages from the Defendants for all elements of damages as authorized and allowed by the laws of the State of Texas, including:

a. The loss of the care, maintenance, support services, advice, counsel, and reasonable contributions of a pecuniary value in reasonable probability Frank Goodman and Misty Sonnier (the surviving husband and daughter), would have received from Judy Goodman had she lived;

b. the loss of the positive benefits flowing from the love, comfort, companionship, and society that they, in reasonable probability, Frank Goodman and Misty Sonnier (the surviving husband and daughter), would have received from Judy Goodman had she lived;

c. The emotional pain, torment, and suffering experienced by Frank Goodman and Misty Sonnier (the surviving husband and daughter) because of the death of Judy Goodman, their loving wife and mother;

d. The loss of the present value of the assets that Judy Goodman, Deceased, in reasonable probability, would have added to the estate and left at natural death to Frank Goodman and Misty Sonnier (the surviving husband and daughter).

Frank Goodman and Misty Sonnier (the surviving husband and daughter), seek to recover the afore-mentioned damages which have been sustained in the past and in reasonable probability will be sustained in the future.

Frank Goodman and Misty Sonnier (the surviving husband and daughter) were all dependent upon Judy Goodman, Deceased for financial contributions, care, service, and contributions of pecuniary value. As a result of the malfeasance of the Defendants, these Plaintiffs have been deprived of said contributions and services, resulting in damages to Frank Goodman and Misty Sonnier (the surviving husband and daughter), for which damages the Plaintiffs seek compensation from the Defendants. Also, included as recoverable damages are

their loss of society, companionship, solace, and their mental anguish, which losses and damages were caused by the severe injury and death of Judy Goodman, Deceased. Plaintiffs have been deprived of the counsel, devoted attention, maintenance, support, care, consortium, protection, love and loss of inheritance, which would have been afforded to them and would have continued to be afforded had their wife and mother, Judy Goodman, Deceased, not been killed. The Plaintiffs seek to recover the afore-mentioned damages which have been sustained in the past and in reasonable probability will be sustained in the future.

As a result of the occurrence described herein, all Plaintiffs have sustained the foregoing damages described above, as well as the following damages for which they specifically plead:

1. General damages;

2. Special damages;

3. Treble damages;

4. Punitive and exemplary damages as allowed by law;

5. Costs of court;

6. Pre-judgment and Post-judgment interest;

7. Such further legal and equitable relief as this court may deem proper.

### X. Punitive Damages

The foregoing acts and omissions subject Defendants to punitive damages, which the Plaintiffs affirmatively seek. Specifically, the aforementioned acts were done with conscious and willful indifference to Judy Goodman's and/or Plaintiffs' safety and well-being and as such, amount to malice for which Plaintiffs seek recovery of exemplary or punitive damages in an amount sufficient to deter such unconscionable and irresponsible conduct in the future. The malicious acts and conduct of the Defendants were heedless and reckless disregard of the rights of Judy Goodman

and/or Plaintiffs and involved such an entire want of care as to indicate that it was the result of conscious indifference to their rights, welfare and safety.

### XI. Damages Amount

Although the amount of damages remains within the discretion of the jury, and this Honorable Court, the Plaintiff pleads for damages in an amount within the jurisdictional limits of this Court.

### XII. Jurisdiction

By reasons of all the above and foregoing, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional amounts of this Court.

### XIII. Rule 193.7 Notice

Plaintiffs hereby put Defendants on notice that Plaintiffs intend to use all Defendants' discovery responses as evidence at pre-trial proceedings and/or trial in accordance with such right and privileges established by TEXAS RULE OF CIVIL PROCEDURE 193.7.

### XIV. Conditions Precedent

Plaintiff has performed all conditions precedent for the maintenance of this lawsuit.

### XV. Self-Authentication

Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, this is the "actual" written notice to you that all documents produced in this litigation shall be used by the Plaintiff at pretrial proceedings and trial. Hence, all documents produced in this litigation are deemed self-authenticating for use in any pretrial proceeding or at trial; and any objections thereto by the Defendants shall be in writing or placed on the record, giving Plaintiff a reasonable opportunity to establish the challenged document's authenticity.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that on the final trial Plaintiffs have Judgment against Defendants for damages in an amount in excess of the minimum jurisdictional limits of the Court; pre-judgment and post-judgment interests as provided by law, costs of suit, punitive damages in an amount to deter such unconscionable and irresponsible conduct in the future and such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

PROVOST ★ UMPHREY
LAW FIRM, L.L.P.
490 Park Street
P. O. Box 4905
Beaumont, Texas   77704
(409) 835-6000
Fax No. (409) 838-8888

By: _____
Mark Sparks
State Bar No. 24000273

ATTORNEYS FOR PLAINTIFFS

**JURY DEMAND**

Plaintiffs respectfully demand a trial by jury.

_____
Mark Sparks

# EXHIBIT A



June 2008

# URGENT DRUG RECALL INFORMATION

Dear Walgreens Prescription Customer,

Our records indicate that you received one or more prescriptions for Morphine Sulfate Extended-Release (ER) tablets from a Walgreens pharmacy.

The manufacturer of Morphine Sulfate ER tablets, Ethex Corporation, is recalling several lots of this medication because there is the possibility that some tablets may be oversized, and may contain as much as twice the appropriate level of active ingredient. Your prescription may have included product from one of these affected lots.

We do not recommend that you discontinue taking Morphine Sulfate ER tablets without speaking to your physician. We ask that you attempt to contact your physician or other health care provider and share this information with them. You may return any remaining Morphine Sulfate tablets to your local Walgreens pharmacy for a refund.

If you have questions about this recall, you may contact the manufacturer at 1-800-321-1705 Monday through Friday 8 a.m. to 5 p.m. Central Daylight Time, or via email at **customer-service@ethex.com**. You may also visit their web site **www.ethex.com**. Information is also available at the FDA web site **www.fda.gov**.

Thank you for your attention to this matter. We look forward to seeing you at Walgreens so that we can continue to serve all of your healthcare needs.

Sincerely,

Kermit R. Crawford, R.Ph.
Senior Vice President
Pharmacy Services

# Exhibit "B"

# DEPARTMENT OF STATE HEALTH SERVICES
# VITAL STATISTICS UNIT

TEXAS DEPARTMENT OF STATE HEALTH SERVICES - VITAL STATISTICS

| STATE OF TEXAS | CERTIFICATE OF DEATH | STATE FILE NUMBER | 142-08-060509 |
|---|---|---|---|

1. LEGAL NAME OF DECEASED (Include AKA's, if any) (First, Middle, Last)  **JUDY ANN GOODMAN**  (Maiden) **WILLIAMS**   | 2. DATE OF DEATH-ACTUAL OR PRESUMED **04/10/2008**

| 3. SEX FEMALE | 4. DATE OF BIRTH 02/10/1941 | 5. AGE-Last Birthday (Years) 67 | IF UNDER 1 YR. Mo Days | IF UNDER 1 DAY Hours Min | 6. BIRTHPLACE (City & State or Foreign Country) SABINE PASS, TX |
|---|---|---|---|---|---|

7. SOCIAL SECURITY NUMBER **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**   | 8. MARITAL STATUS AT TIME OF DEATH ☐ Widowed ☐ Divorced ☐ Never Married ☐ Unknown ☒ Married | 9. SURVIVING SPOUSE'S NAME (If wife, give name prior to first marriage) **FRANK M GOODMAN**

| 10a. RESIDENCE: STREET ADDRESS 412 NORTH 4TH STREET | 10b. APT. NO. | 10c. CITY OR TOWN NEDERLAND |
|---|---|---|

| 10d. COUNTY JEFFERSON | 10e. STATE TEXAS | 10f. ZIP CODE 77627 | 10g. INSIDE CITY LIMITS? ☒ Yes ☐ No |
|---|---|---|---|

11. FATHER'S NAME **LYNN EDWARD WILLIAMS**   | 12. MOTHER'S NAME PRIOR TO FIRST MARRIAGE **ELLA MAE CARLISLE**

13. PLACE OF DEATH (CHECK ONLY ONE)

IF DEATH OCCURRED IN A HOSPITAL: ☐ Inpatient ☐ ER/Outpatient ☐ DOA   IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: ☐ Hospice Facility ☐ Nursing Home ☒ Decedent's Home ☐ Other (Specify)

| 14. COUNTY OF DEATH JEFFERSON | 15. CITY/TOWN, ZIP (IF OUTSIDE CITY LIMITS, GIVE PRECINCT NO.) NEDERLAND, 77627 | 16. FACILITY NAME (if not institution, give street address) 412 NORTH 4TH STREET |
|---|---|---|

| 17. INFORMANT'S NAME & RELATIONSHIP TO DECEASED FRANK M GOODMAN - HUSBAND | 18. MAILING ADDRESS OF INFORMANT (Street and Number, City, State, Zip Code) 412 NORTH 4TH STREET, NEDERLAND, TX 77627 |
|---|---|

| 19. METHOD OF DISPOSITION ☒ Burial ☐ Cremation ☐ Donation ☐ Entombment ☐ Removal from state ☐ Other (Specify) | 20. SIGNATURE AND LICENSE NUMBER OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH  **MATT THOMPSON ,BY ELECTRONIC SIGNATURE - 8408** | 21. ☐ Unknown Section 20 Block 8 Lot 10 Space 2 |
|---|---|---|

| 22. PLACE OF DISPOSITION (Name of cemetery, crematory, other place) GREENLAWN MEMORIAL PARK | 23. LOCATION (City/Town, and State) GROVES, TX |
|---|---|

| 24. NAME OF FUNERAL FACILITY CLAYTON THOMPSON FUNERAL DIRECTORS, INC | 25. COMPLETE ADDRESS OF FUNERAL FACILITY (Street and Number, City, State, Zip Code) 5200 W. PARKWAY, GROVES, TX 77619 |
|---|---|

26. CERTIFIER (Check only one)
☐ Certifying physician-To the best of my knowledge, death occurred due to the cause(s) and manner stated.
☒ Medical Examiner/Justice of the Peace - On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date and place, and due to the cause(s) and manner stated.

| 27. SIGNATURE OF CERTIFIER BRAD BURNETT , BY ELECTRONIC SIGNATURE | 28. DATE CERTIFIED (Mo/Day/Yr) 06/04/2008 | 29. LICENSE NUMBER | 30. TIME OF DEATH(Actual or presumed) 04:35 PM |
|---|---|---|---|

| 31. PRINTED NAME, ADDRESS OF CERTIFIER (Street and Number, City,State,Zip Code) BRAD BURNETT 7933 VITERBO ROAD, STE 1, BEAUMONT, TX 77705 | 32. TITLE OF CERTIFIER JP |
|---|---|

PART 33. PART 1. ENTER THE CHAIN OF EVENTS - DISEASES, INJURIES, OR COMPLICATIONS - THAT DIRECTLY CAUSED THE DEATH. DO NOT ENTER THE TERMINAL EVENTS SUCH AS CARDIAC ARREST, RESPIRATORY ARREST, OR VENTRICULAR FIBRILLATION WITHOUT SHOWING THE ETIOLOGY. DO NOT ABBREVIATE. ENTER ONLY ONE CAUSE ON EACH LINE.   | Approximate interval Onset to death

IMMEDIATE CAUSE (Final disease or condition resulting in death)   a. **COMBINED DRUG TOXICITY**

Due to (or as a consequence of):

Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST   b.

Due to (or as a consequence of):

c.

Due to (or as a consequence of):

d.

| PART 2. ENTER OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH , BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I. | 34. WAS AN AUTOPSY PERFORMED? ☒ Yes ☐ No |
|---|---|
| | 35. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☒ Yes ☐ No |

| 36. MANNER OF DEATH ☐ Natural ☒ Accident ☐ Suicide ☐ Homicide ☐ Pending Investigation ☐ Could not be determined | 37. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ No ☐ Probably ☒ Unknown | 38. IF FEMALE: ☒ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to one year before death ☐ Unknown if pregnant within the past year | 39. IF TRANSPORTATION INJURY, SPECIFY: ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify) |
|---|---|---|---|

| 40a. DATE OF INJURY (Mo/Day/Yr) 04/10/2008 | 40b. TIME OF INJURY 04:35 PM | 40c. INJURY AT WORK? ☐ Yes ☒ No | 40d. PLACE OF INJURY (e.g. Decedent's home, construction site, restaurant, wooded area) DECEDENTS HOME |
|---|---|---|---|

| 40e. LOCATION (Street and Number, City,State,Zip Code) 412 NORTH 4TH STREET, NEDERLAND, TX 77627 | 40f. COUNTY OF INJURY JEFFERSON |
|---|---|

41. DESCRIBE HOW INJURY OCCURRED

OVERDOSE

| 42a. FUNERAL FILE NO. 05-035 | 42b. DATE RECEIVED BY LOCAL REGISTRAR 06/26/2008 | 42c. REGISTRAR REGISTRAR - CITY OF NEDERLAND, ELECTRONICALLY FILED |
|---|---|---|

EDR Number

This is a true and correct reproduction of the original record as recorded in this office. Issued under authority of Section 191.051, Health and Safety Code.

ISSUED

*Geraldine L. Harris*

GERALDINE R. HARRIS
STATE REGISTRAR

JUN 30 2008

ARU

VS-112 REV 1/2006

WARNING   The penalty for (knowingly) making a false statement in this form can be 2-10 years in prison and a fine up to $10,000. (Health and Safety Code, Sec. 195, 1989)

M00001018

# AUTOPSY REPORT

## Case 08-0433

## April 11, 2008

## ON THE BODY OF

**Judy Ann Goodman
412 North 4th Street
Nederland, Texas**

**CAUSE OF DEATH:  Combined drug toxicity.**

**MANNER OF DEATH:  Accident.**

_____          _____ 6/3/2008
**Dr. Tommy J. Brown**                          **Date**
**Forensic Pathologist**

JUSTICE COURT - PCT. 7

2008 JUN -3 PM 4:31



# POSTMORTEM EXAMINATION ON THE BODY OF

### Judy Ann Goodman
### 412 North 4th Street
### Nederland, Texas

**HISTORY:** This 67 year old Caucasian female was found dead at 4:35 p.m. on April 10, 2008, at her residence.

**AUTOPSY:** The autopsy was performed by Dr. Tommy J. Brown at the request and upon the written authorization of The Honorable Brad Burnett, Justice of the Peace, Precinct 7, Jefferson County, Texas, beginning at 6:50 a.m. on April 11, 2008, in the Southeast Texas Forensic Center, Inc., DBA: Jefferson County Morgue.

**CLOTHING:** The decedent was dressed in a short blue nightgown, a green ladies shirt and a pair of black panties.

**PERSONAL PROPERTY:** There were gold colored rings with multiple stones with one on each of the left third, fourth and fifth fingers, a gold colored chain necklace with a medallion around the neck, a gold colored chain necklace with a four leaf clover around the neck and a gold colored bracelet around the left wrist. Three gold colored rings and a gold colored chain bracelet with purple stones accompanied the body.

**EXTERNAL APPEARANCE:** The body was that of a white female that measured 64 inches in length, weighed 145 pounds and appeared the stated age of 67 years. There was no rigor of the body. There were early decomposition changes of the body as manifest by discoloration of the face and chest. The hair was brown with gray roots and measured 10 inches in length. The eyes were closed; the conjunctivae were congested; the corneae were dull; the irides were brown. The nose and ears were unremarkable. The teeth were natural. There were no abrasions, contusions or lacerations of the inner mucosa of the lips. A small amount of foamy fluid exuded from the mouth. The neck was symmetrical and without scars or evidence of trauma. The chest was symmetrical and without scars. The breasts were large and without palpable masses. There was a 10 inch oblique scar in the right upper quadrant of the abdomen. There was a 15 inch scar that began at the xiphoid process and extended along the midline to the suprapubic

08-0433  Judy Ann Goodman

area. Multiple stretch marks were present of the body. There was a 10 inch scar that began in the right lower quadrant of the abdomen that extended posteriorly into the right flank area. The abdomen was mildly protuberant. The pubic hair was moderate in amount. The external genitalia were normal for a female for the stated age. There were small scars of the knees and anterior lower legs. There were multiple small scars of the forearms and back of the hands. Ecchymotic areas were present of the right forearm and a few of the left forearm. The back had posterior lividity with blanching over the pressure areas.

INTERNAL EXAMINATION: The body was opened with a Y-shaped thoracoabdominal incision to reveal fat and red-brown muscles of the upper anterior thorax. The abdominal panniculus at the level of the umbilicus measured $1^5/_8$ inches. The organs were in their usual locations and had normal anatomic relationships to one another. There was no fluid within the peritoneal or the pleural cavities. A small amount of serous fluid was present in the pericardial sac.

CARDIOVASCULAR SYSTEM: The heart weighed 260 grams. It had a smooth and glistening epicardial surface with a mild to moderate amount of fat. The coronary arteries followed a normal distribution and had mild to moderate atherosclerotic involvement. On sectioning, the myocardium was red-brown. There was no fibrosis. The walls of the right and left ventricles were of normal thickness. The cardiac valves were of normal size and had thin pliable cusps. The aorta had mild proximal atherosclerosis.

RESPIRATORY SYSTEM: The right lung weighed 400 grams and the left weighed 425 grams. The upper pleural surfaces were dark gray and became darker in the more dependent portions. On sectioning, there was no tumor, infectious process, hemorrhage or pulmonary emboli.

HEPATOBILIARY SYSTEM: The liver weighed 1,640 grams. It had a dark brown external and cut surface. There was no tumor, infectious process or hemorrhage. The gallbladder was not found at autopsy. The hepatobiliary ducts were patent.

SPLEEN: The spleen weighed 130 grams. It had a purple-gray intact capsule. On sectioning, the parenchyma was red-brown. The Malpighian corpuscles were prominent.



**ADRENALS:**   Both adrenal glands were surrounded by a moderate amount of fat.   On sectioning, the cortices were yellow and of normal thickness.  The medullae were gray-tan and unremarkable.

**PANCREAS:**   The pancreas had the usual size and shape.  It was red-brown and lobulated on external and cut surface.  It had autolysis.

**GASTROINTESTINAL TRACT:**  The esophagus had a gray-tan mucosa. The stomach contained 30 milliliters of a semi-solid digestate mixed with a few solid particles.    The duodenum, small and large bowels were unremarkable.  The appendix was not found at autopsy.

**GENITOURINARY TRACT:**  The left kidney weighed 130 grams and the right weighed 60 grams.  Both had capsules that stripped with ease.  The right kidney was markedly atrophic and granular when compared with the left.  On sectioning, the cortices and medullae were well demarcated.  There was no tumor, infectious process or hemorrhage.  The urinary bladder was empty.   The bladder mucosa was white-tan.   The uterus, ovaries and fallopian tubes were not found at autopsy.

**NECK:**  The internal structures of the neck were examined. The proximal esophagus had a gray-tan mucosa.  The larynx contained a small amount of mucous but was otherwise unremarkable.  There was no food lodged in the upper airway.  The hyoid bone, thyroid cartilage and cricoid cartilage were intact and had no fractures.  The thyroid gland had the usual butterfly shape and was red-brown on both external and cut surfaces.  There were no nodules.

COPY

## PATHOLOGICAL FINDINGS

1. Combined drug toxicity (alprazolam, acetaminophen, cyclobenzaprine, trazodone, hydrocodone and hydromorphone).
2. Medical history of chronic pain from leg and hip problems, hip replacement and kidney problems.

CAUSE OF DEATH:  Combined drug toxicity.

MANNER OF DEATH:  Accident.

I CERTIFY THIS AS A TRUE COPY
Witness my Hand and Seal of Office

MAR 1 7 2009

LOLITA RAMOS, DISTRICT CLERK
JEFFERSON COUNTY, TEXAS
BY _____ DEPUTY

COPY

08-0433  Judy Ann Goodman

5